Opinion filed July 26, 2007


















 
 
  
 
 







 
 
  
 
 




Opinion filed July 26, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00078-CR 

                                                     __________

 

                              TIMOTHY
WAYNE TOWERY, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                          On
Appeal from the 42nd District Court

 

                                                          Taylor County,
Texas

 

                                                 Trial
Court Cause No. 21,888-A

 



 

                                                                   O
P I N I O N      

Timothy
Wayne Towery appeals his conviction by a jury of the offense of injury to a
child, O.J.  The trial court assessed his
punishment at twenty-five years in the Texas Department of Criminal Justice, Institutional
Division.  Towery contends in two issues
that the evidence is legally and factually insufficient to prove that he
intentionally and knowingly caused serious bodily injury to a child because
there is insufficient evidence to prove intent. 
We affirm.  








In order
to determine if the evidence is legally sufficient, the appellate court reviews
all of the evidence in the light most favorable to the verdict and determines
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S.
307, 319 (1979).  To determine if the
evidence is factually sufficient, the appellate court reviews all of the
evidence in a neutral light.  Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga
v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson v. State,
23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d
404, 407-08 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).  Then, the
reviewing court determines whether the evidence supporting the verdict is so
weak that the verdict is clearly wrong and manifestly unjust or whether the
verdict is against the great weight and preponderance of the conflicting
evidence. Watson, 204 S.W.3d at 414-15; Johnson, 23 S.W.3d at
10-11.

Carla
Early testified that she is in her seventeenth year as a caseworker with
Children=s Protective Services.  After receiving a report to go to the home of
Roblyn Dannette Jackson, with whom she had previously worked, Early observed
numerous injuries to O.J., Jackson=s son. 
Early took O.J. to her office and made photographs of his injuries.  Several of the photographs showing injuries
to O.J.=s side, back, scalp, face, and neck were
admitted into evidence.  She indicated
that she had never seen anything like it before.  She stated that, after she contacted police, Detective Brian Trail
was assigned to the investigation.

Brian
Trail testified that he is a detective
with the Abilene Police Department who is assigned to the Child Advocacy
 Center to investigate
crimes against children.  He said that,
after being assigned to investigate Jackson and
Towery, he observed and operated recording equipment while a forensic
interviewer interviewed O.J. and K.J., Jackson=s two children.  Detective Trail indicated that, after
observing the interview with the children, he talked to Towery, who gave him a
written statement.  In the statement,
Towery acknowledged disciplining O.J. for eating too much peanut butter at one
time and for turning on the gas stove. 
He said that he struck O.J. from ten to twelve times with a red
cable.  He admitted that he had hit O.J.
on the back and legs with the red cord and that he had disciplined O.J. with a
belt.  In the statement, Towery insisted
that he was not trying to bruise O.J. like that and never wanted that to
happen.

Several
pictures that Detective Trail identified as photographs he made of O.J. were
admitted into evidence.  Detective Trail
said that he had been doing this kind of work for more than two years and that
he had never seen a child injured like this before.  On cross-examination, Detective Trail
acknowledged that O.J. had said that the injury to his head was from a child
pushing him down.








O.J.
testified, raising his shirt so that the jury could observe the injuries on his
back.  He said ATim@ had done that to him.  He stated that ATim@ did not stop when he cried or when he
begged him to stop.

Dr.
James Morrison testified that he is an emergency room physician at Hendrick Trauma Center.  He indicated that O.J. was brought in so that
he might evaluate the injuries he had sustained.   He stated that O.J. had numerous abrasions
and whelps of varying ages across his back and flanks.  He expressed his belief that O.J. had serious
bodily injury, significant permanent scarring that was still present at the
time of trial.  Elaborating, he said that
O.J. had serious permanent disfigurement and that he would always have
significant scarring.  He also indicated
that spanking with the red cord or cable wrapped around one=s hand would be consistent with the
injuries he had observed on O.J.=s backside. 
According to Dr. Morrison, the injuries had the potential for causing
serious risk of death.  On
cross-examination, Dr. Morrison acknowledged that he did not have personal
knowledge as to how the injuries occurred. 
On redirect examination, he said that the injuries appeared to be of
varying ages that would be consistent with potentially an ongoing problem.

Jackson identified Towery as her husband.  She said that she told Detective Trail in a
written statement that she and Towery had spanked O.J. and her daughter
before.  She indicated in the statement
that Towery spanked O.J. more than she did because she could not handle chasing
him down, fighting with him, and Ahim kicking me@ because she was seven and one-half months
pregnant.  She related that she sought
Towery=s help in disciplining her children but
that he was reluctant to do so because they were not his biological
children.  She said that, after spanking
the children, Towery would hug on them and cry with them.

Jackson testified that she started spanking the
children with a belt because spanking without it hurt her hand.  She said that Towery spanked them with a belt
and that both she and Towery had spanked O.J. on his leg, arms, and torso.  She insisted that Towery did not purposely do
it but that it happened when O.J. was running or hiding.  She stated that the intention was to spank
the children on their butt.  She related
that she had spanked O.J. with the red cable three or four times but had only
seen Towery spank him once with it.  She
identified the marks on O.J. as having come from her and Towery spanking
him.  She insisted that after the whelps
occurred when Towery used the red cord the first time, Towery did not whip O.J.
again after he saw them.  She said that
Towery did not intend to do this and that he is not a mean or evil person.








On
cross-examination, Jackson
acknowledged that she had told the prosecutor that she did not take the
children for any kind of medical treatment because she did not want them to
feel like they were being pampered.  She
denied that Towery had struck O.J. ten times while she watched.  She acknowledged that there were no marks on
O.J.=s rear end. 
She further acknowledged that the children did not have the scars when
they were picked up before Towery came into their life and that they had never
been beaten like that before Towery came into their life.

Early,
when recalled as a witness, testified that, at the time of her intervention in
this case, she had known Jackson
for quite a period of time and had never noticed any injury to either child
until that time.  She indicated that Jackson, rather than
showing any remorse for O.J.=s condition, suggested that it was the
fault of Children=s Protective Services that she could not do
the discipline she needed to do on her kids. 
We hold that the evidence is legally and factually sufficient to support
the conviction.  

Towery
contends that the evidence is insufficient because it does not show that he
intentionally and knowingly caused O.J.=s injuries. 
His contention appears to be based upon a suggestion that Jackson was the
instigator of punishing the children and upon testimony from him and Jackson
that he did not mean to inflict the injury on O.J. that he inflicted.  

Proof of
a defendant=s culpable mental state is almost
invariably proven by circumstantial evidence. 
Morales v. State, 828 S.W.2d 261, 263 (Tex. App.CAmarillo 1992), aff=d, 853 S.W.2d 583 (Tex. Crim. App. 1993).   With respect to intent, the jury is called
upon to review all the evidence and may reasonably conclude from the
circumstantial evidence that the requisite mental state existed, which may be
inferred from acts, words, or conduct.  Id.  The jury, having heard Towery=s admission that he inflicted the injuries
suffered by O.J., was not required to believe Towery=s assertions that he did not intend to
inflict the injuries.  Id.  We overrule issues one and two.

The
judgment is affirmed.

 

PER CURIAM

July 26, 2007

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  McCall, J., 

Strange,
J., and Hill, J.[1]











[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.